O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LAPREYIA DOUGLAS, | ) | NO. CV 07-3284-MAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff filed a Complaint on May 18, 2007, seeking review of the denial by the Social Security Commissioner ("Commissioner") of her application for supplemental security income ("SSI"). The parties filed a Joint Stipulation on February 2, 2008, in which: Plaintiff seeks an order reversing the Commissioner's decision and finding that Plaintiff is disabled and entitled to SSI benefits or, in the alternative, remanding the matter for a new administrative hearing; and Defendant requests that the Commissioner's decision be affirmed. On May 28, 2008, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Court has taken the parties' Joint Stipulation under submission without oral argument.

1

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On December 1, 1994, Plaintiff's mother, Kimberly Douglas, filed an application for SSI on behalf of her minor daughter, alleging disability based on "audio deficit disorder" and "hyper deficit disorder." (Administrative Record ("A.R.") 123-25, 134.)   The Social Security Administration ("SSA") determined that Plaintiff was eligible for SSI, effective November 1, 1994, based on a primary diagnosis of "Learning Disorder" and secondary diagnosis of "ADD" (Attention Deficit Disorder). (A.R. 177.)   In July 1997, the SSA conducted a continuing disability review[1] of Plaintiff's case and found that she had not medically improved[2] and functionally equaled Listing 112.02 for Organic Mental Disorders.[3]   (A.R. 232, 246.)

---

[1]   When a claimant has been granted benefits, her "continued entitlement to such benefits must be reviewed periodically."  20 C.F.R. § 416.994a(a); *see also* 20 C.F.R. § 416.989 ("After we find that you are disabled, we must evaluate your impairment(s) from time to time to determine if you are still eligible for payments based on disability"). To accomplish this, the SSA engages in "continuing disability reviews," which vary in frequency.  20 C.F.R. § 416.989; <u>Flaten v. Sec'y of Health and Human Servs.</u>, 44 F.3d 1453, 1460 (9th Cir. 1995).   Because a presumption of continuing disability arises once a claimant has been identified as disabled, the Commissioner has the burden of producing evidence to meet or rebut the presumption.  *See* <u>Bellamy v. Sec'y of Health and Human Servs.</u>, 755 F.2d 1380, 1381 (9th Cir. 1985).

[2]   In a cessation of disability benefits case such as this one, the first issue that must be addressed is whether there has been medical improvement in Plaintiff's condition since the most recent favorable determination.  20 C.F.R. § 416.994a.   In this case, the most recent favorable decision was entered on July 17, 1997.  (A.R. 232.)

[3]   Specifically, the SSA determined that Plaintiff functionally equaled Listing 112.02B2(a) and (d), because she demonstrated a "marked impairment in age-appropriate cognitive/communicative function" and "marked difficulties in maintaining concentration, persistence, or pace," due to her developmental delay, learning disorder, and Attention Deficit Hyperactivity Disorder ("ADHD").  *(A.R. 232, 237.)  See* 20 C.F.R. Part 404, Appendix 1, Subpart P § 112.02.

In April 2004, the SSA again reviewed Plaintiff's case and determined initially and upon reconsideration that Plaintiff's condition had medically improved and her disability had ceased on April 1, 2001. (A.R. 362-65.)  On March 8, 2006, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Philip J. Simon ("ALJ"). (Joint Stipulation ("J.S.") 3.)  On July 5, 2006, the ALJ denied Plaintiff's claim. (A.R. 41.)  On April 7, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (A.R. 8-11.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff continues to have "severe" medically determinable impairments, but as of April 1, 2001, she does not meet or medically equal a Listing in Appendix 1, Subpart P, Regulation No. 4.[4] (A.R. 41.)  The ALJ recognized that, as of July 17, 1997, Plaintiff functionally equaled Listing 112.02, but found that Plaintiff had medically improved to the extent that she no longer meets, medically equals, or functionally equals any Listing. (A.R. 40.)  The ALJ also noted that Plaintiff's mother's allegations regarding Plaintiff's symptoms and limitations were not fully credible. (A.R. 41.) Accordingly, the ALJ concluded that Plaintiff's disability status ceased effective April 1, 2001. (*Id.*)

///

///

---

[4]    Specifically, the ALJ found that Plaintiff has severe "cognitive deficits" that "continue to significantly impact her ability to function." (A.R. 34.)

3

1

2

### STANDARD OF REVIEW

3       Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's
4  decision to determine whether it is free from legal error and supported
5  by substantial evidence in the record as a whole.  Orn v. Astrue, 495
6  F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant
7  evidence as a reasonable mind might accept as adequate to support a
8  conclusion.'"  Id. (citation omitted).  The "evidence must be more than
9  a mere scintilla but not necessarily a preponderance."  Connett v.
10  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the
11  record can constitute substantial evidence, only those "'reasonably
12  drawn from the record'" will suffice.  Widmark v. Barnhart, 454 F.3d
13  1063, 1066 (9th Cir. 2006)(citation omitted).

14

15      Although this Court cannot substitute its discretion for that of
16  the Commissioner, the Court nonetheless must review the record as a
17  whole, "weighing both the evidence that supports and the evidence that
18  detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of
19  Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also
20  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
21  responsible for determining credibility, resolving conflicts in medical
22  testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d
23  1035, 1039-40 (9th Cir. 1995).

24

25      The Court will uphold the Commissioner's decision when the evidence
26  is susceptible to more than one rational interpretation.  Burch v.
27  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may
28  review only the reasons stated by the ALJ in his decision "and may not

affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following five issues:  (1) whether the ALJ's finding that there has been medical improvement in Plaintiff's condition is based on substantial evidence; (2) whether the ALJ's finding that Plaintiff's impairments do not meet or medically equal Listing 112.02 for Organic Mental Disorders is based on substantial evidence; (3) whether the ALJ's finding that Plaintiff's impairments do not meet or medically equal Listing 112.05 for Mental Retardation is based on substantial evidence; (4) whether the ALJ's finding that Plaintiff's impairments do not functionally equal any Listing is based on substantial evidence; and (5) whether the ALJ gave sufficient weight to the testimony of Plaintiff's mother.  (J.S. 4.)  For the reasons detailed below, the Court finds that despite evidence of some medical improvement, the nature and extent of Plaintiff's impairments continue to be sufficiently severe to meet or medically equal Listings 112.02 and 112.05.  In view of this conclusion, the Court need not, and does not, address the fourth and fifth issues raised by Plaintiff.

**I.   The ALJ's Finding That Plaintiff Has Medically Improved Is Supported By Substantial Evidence.**

Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994a(c).  To determine whether there has been medical improvement, the claimant's current condition must be compared with the claimant's condition on the last date that the claimant was found disabled. *See* 20 C.F.R. § 416.994a(b).

Here, in assessing whether Plaintiff's condition medically improved, the ALJ compared Plaintiff's medical condition on July 17, 1997, which was the last date on which Plaintiff received a favorable disability decision, to her medical condition at the time of his decision. (A.R. 32, 246.) In assessing the extent to which Plaintiff's medical condition improved, the ALJ relied on various psychological examination results, as well as the hearing testimony of medical expert Betty Borden, M.D., to conclude that "there has been substantial improvement in [Plaintiff's] level of adaptive, social, and academic functioning, thus constituting medical improvement." (A.R. 32.) After carefully reviewing the record as a whole, the Court concludes that the ALJ's finding of medical improvement is supported by substantial evidence and free from legal error.[5]

---

[5]  As will be discussed in greater detail below, while Plaintiff's condition has medically improved since 1997, Plaintiff's overall cognitive impairments and attendant functional limitations continue to render her severely impaired.

On June 13, 1997, Plaintiff was examined by Mark D. Pierce, Ph.D., a clinical psychologist.  (A.R. 404-10.)  Testing revealed that Plaintiff had a performance IQ of 58, verbal IQ of 72, and full-scale IQ of 62.  (A.R. 408.)  Plaintiff was diagnosed with borderline intellectual functioning and probable ADHD.  (A.R. 409.)  At that time, Plaintiff's teachers reported that Plaintiff had "marked" limitations in most areas of school-related social functioning, cognitive functioning, and personal conduct.  (A.R. 31, 238-40.)  On July 17, 1997, SSA psychiatrist Melvin L. Schwartz, Ph.D, conducted a continuing disability review of Plaintiff's case and concluded that Plaintiff had "marked impairments in cognitive functioning and in concentration and persistence."  (A.R. 237.)  Dr. Schwartz determined that Plaintiff's impairments were "functionally equal to Listing 112.02B2[(a) and (d)]."[6] (*Id.*)

On March 27, 2001, Plaintiff underwent a consultative psychological evaluation, by Jack Stephenson, Ph.D., a licensed psychologist. (A.R. 417-22.)  As part of the evaluation, Dr. Stephenson administered the Wechsler Intelligence Scale for Children ("WISC") III, a standard test used to assess intellectual ability, including verbal and nonverbal (performance) functioning.  (*Id.*)  *See also* www.minddisorders.com.  Dr. Stephenson assessed Plaintiff with a performance IQ of 68, verbal IQ of 81, and full-scale IQ of 72.  These scores represent a ten point improvement in her performance and full-scale IQ, and a nine point

---

[6]    Listing 112.02B(a) is satisfied if there is sufficient evidence of a marked impairment in age-appropriate cognitive/communicative function.  Listing 112.02B(d) is satisfied if there is sufficient evidence of a marked impairment in maintaining concentration, persistence, or pace.  20 C.F.R. Part 404, Appendix 1, Subpart P § 112.02B.

1  improvement in her verbal IQ.[7]  (A.R. 422.)

2

3       On November 24, 2003, Dr. Stephenson re-evaluated Plaintiff.  (A.R.

4  423-28.)   Dr. Stephenson administered the updated Version IV of the

5  WISC, which tested slightly different areas of cognitive functioning.

6  Test results revealed improvement in all functional areas, except for

7  working memory.  Plaintiff was assessed with a perceptual reasoning IQ

8  of 71; verbal comprehension IQ of 81; processing speed IQ of 100; full-

9  scale IQ of 73; and working memory IQ of 62.[8]  (A.R. 427.)   Dr.

10 Stephenson found that Plaintiff "appears to have developed quite nicely

11 overall and is an engaging young woman whose interpersonal presentation

12 appeared to be stronger than her testing on standardized measures."

13 (A.R. 426.)

14

15      On December 8, 2005, G.A. Elmer Griffin, Ph.D., an SSA panel expert

16 and psychology consultant retained on behalf of Plaintiff, conducted a

17

18 ─────────────────

19      [7]    Although Plaintiff tested higher in 2001 than in 1997, Dr.
   Stephenson opined that Plaintiff's overall cognitive functioning was in
20 the "borderline range overall, with significantly stronger verbal
   abilities (low average range) than nonverbal abilities (mild mentally
21 retarded range)."   (A.R. 419.)   In addition, Plaintiff's academic
   achievement test scores revealed that Plaintiff was measuring at the
22 "5th to 7th grade equivalency, considered in the average range." (A.R.
   420.)   Dr. Stephenson concluded that Plaintiff's "acquired academic
23 skills were stronger than her overall IQ, suggestive of hard work by
   [Plaintiff], her teachers, and her mother" and "indicative of excellent
24 academic support."  (*Id.*)

25      [8]    Dr. Stephenson opined that Plaintiff was "functioning
   intellectually in the borderline range overall, with stronger verbal
26 comprehension abilities (low average range) [than] perceptual reasoning
   abilities (borderline range).  The working memory index tested in the
27 mild mentally deficient range.  [Plaintiff's] processing speed index
   tested in the average range.  Overall, [Plaintiff] appeared to have
28 relatively weaker visual perceptual abilities and working memory
   deficits, perhaps related to attentional fluctuations."  (A.R. 426.)

psychological evaluation of Plaintiff.  (A.R. 505-08.)  Dr. Griffin administered the Test of Nonverbal Intelligence-III,[9] which revealed an IQ score of 93.  (A.R. 507.)  Dr. Griffin opined that Plaintiff has made "remarkable improvement since 1997," as her IQ score of 93 places her in the "low average range of intellectual functioning."  (*Id.*)

Accordingly, substantial evidence in the record supports the ALJ's conclusion that Plaintiff's condition has medically improved since 1997.

**II.  The ALJ's Finding That Plaintiff Does Not Meet Or Medically Equal Listing 112.02 Is Not Supported By Substantial Evidence.**

If the ALJ finds medical improvement, he must then determine whether Plaintiff has a severe impairment that meets, medically equals, or functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Appendix 1, Subpart P; 20 C.F.R. § 416.994a.  Plaintiff contends that she meets the criteria of Listing 112.02 for Organic Mental Disorder.  (J.S. 14.)  Listing 112.02 states:

*Organic Mental Disorders*:  Abnormalities in perception, cognition, affect, or behavior associated with dysfunction of the brain.  The history and physical examination or laboratory tests, including psychological or neuropsychological tests, demonstrate or support the presence of an organic factor judged to be etiologically related to the abnormal mental

---

[9]   While this particular IQ test is not identical to the WISC tests administered by Dr. Stephenson in 2001 and 2003, it nonetheless evidences medical improvement in Plaintiff's condition since 1997.

state and associated deficit or loss of specific cognitive abilities, or affective changes, or loss of previously acquired functional abilities.

20 C.F.R. Part 404, Appendix 1, Subpart P § 112.02.

The required level of severity for these disorders is met when the criteria set forth in sections A ("Section A") **and** B ("Section B") of Listing 112.02 are satisfied. *Id.* The purpose of the criteria in Section A is to "substantiate medically the presence of a particular mental disorder." 20 C.F.R. Part 404, Appendix 1, Subpart P § 112.00A. The purpose of the Section B criteria is to "describe impairment-related functional limitations which are applicable to children." *Id.* The "functional restrictions in [Section] B must be the result of the mental disorder which is manifested by the medical findings in [Section] A." Id.

Section A is satisfied if Plaintiff has a "medically documented persistence" of **at least one** of the following:

1. Developmental arrest, delay or regression; or
2. Disorientation to time and place; or
3. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
4. Perceptual or thinking disturbance; or
5. Disturbance in personality; or

10

6.  Disturbance in mood; or

7.  Emotional ability; or

8.  Impairment of impulse control; or

9.  Impairment of cognitive function, as measured by clinically timely standardized psychological testing; or

10. Disturbance of concentration, attention, or judgment.

20 C.F.R. Part 404, Appendix 1, Subpart P § 112.02A.

Although the evidence of record demonstrates medical improvement in Plaintiff's condition since 1997, Plaintiff asserts, and the ALJ agrees, that Plaintiff meets the Section A9 criterion, because she has a "well-documented, marked cognitive impairment." (J.S. 15; A.R. 35.) Where "marked" is used as a standard for measuring the degree of limitation, it means more than moderate, but less than extreme. 20 C.F.R. Part 404, Appendix 1, Subpart P § 112.00C. Where, as here, standardized tests are used as the measure of functional parameters, "a valid score that is two standard deviations below the norm for the test will be considered a marked restriction."[10]  *Id.*

Here, in 2001 and 2003, respectively, Plaintiff was evaluated with a valid performance IQ score of 68 and a working memory IQ score of 62. Thus, as the ALJ concedes, Plaintiff, necessarily satisfies Section A9. (A.R. 422, 427.)

---

[10]  The applicable mean, or "norm," is 100, and the standard deviation is 15.  20 C.F.R. Part 404, Appendix 1, Subpart P § 112.00 Therefore, a valid IQ test score of 70 or below constitutes a marked cognitive impairment.

11

Plaintiff contends that she satisfies three additional Section A criteria:  A1 -- developmental arrest, delay, or regression; A3 -- memory impairment; and A10 -- disturbance of concentration, attention, or judgment.  (J.S. 13-15.)  However, it is not necessary to address Plaintiff's additional contentions, because Plaintiff need meet only one criterion in Section A to satisfy the first prong of Listing 112.02, which Plaintiff has done.  20 C.F.R. Part 404, Appendix 1, Subpart P § 112.02A.

While the ALJ determined that Plaintiff's marked cognitive impairments satisfy Section A, the ALJ found that Plaintiff's "impairment-related functional limitations" were not sufficiently marked to meet Section B.  *See* 20 C.F.R. Part 404, Appendix 1, Subpart P § 112.00A.

To meet the standards of Section B of Listing 112.02, Plaintiff must demonstrate a marked impairment in **at least two** of the following four functional domains:

1.   Age-appropriate cognitive/communicative function; or
2.   Age-appropriate social functioning; or
3.   Age-appropriate personal functioning; or
4.   Maintaining concentration, persistence, or pace.

20 C.F.R. Part 404, Appendix 1, Subpart P § 112.02B.

The ALJ concluded that the only one of these functional domains in which Plaintiff has a marked impairment is in age-appropriate

12

cognitive/communicative function.[11]   (A.R. 35.)   Plaintiff contends, however, that her impairments are sufficiently marked to satisfy the following three Section B functional domains: (1) cognitive/communicative function; (2) social functioning; and (3) concentration, persistence, or pace.   (J.S. 17.)   After carefully reviewing the record, the Court concludes that Plaintiff has marked limitations in both age-appropriate cognitive/communicative functioning, as recognized by the ALJ, *and* in maintaining concentration, persistence, or pace.

In finding that Plaintiff's difficulty in concentration, persistence, or pace is less than marked, the ALJ primarily relied on Plaintiff's school records, which demonstrate Plaintiff's commendable academic achievement in regular classes, and the testimony of the non-examining medical expert, Dr. Borden.   The ALJ reasoned that "[i]f [Plaintiff] had significant deficits in both cognitive functioning and in concentration, persistence and pace, there is simply no means by which this level of academic performance could have been accomplished." (A.R. 33.)   However, the ALJ's conclusion ignores the special accommodations Plaintiff receives in school, and the tremendous assistance she receives at home, which not only help her succeed academically but also effectively disguise the presence of Plaintiff's limitations in maintaining concentration and/or pace.

Plaintiff contends, and the Court agrees, that she "has maintained

---

[11]   Specifically, the ALJ concluded that there is "sufficient evidence of 'marked' cognitive impairments, as demonstrated by valid performance IQ scores in the 60's, indicative of cognitive function two standard deviations below the norm."   (A.R. 35.)

deceptively high academic marks through her dependency on the extra help she receives." (J.S. 22.)   As a sophomore in high school, Plaintiff was put into a special academic program in which classes are smaller and the students have the same teachers each year, allowing for more structure and individual attention.   (A.R. 504, 579-80; J.S. 13.) Although Plaintiff is no longer in special education classes per se, she continues to qualify for and receives special accommodations in school because of her medically documented "visual and auditory processing deficits." (A.R. 498-499; J.S. 15.) According to Plaintiff's teachers, Plaintiff's processing deficit "limits her learning [and] school participation.  It limits the condition, manner or duration in which she performs academically (particularly in testing).  She needs a 504 plan in order for her educational needs to be met as adequately as those of her non-disabled peers."[12]   (A.R. 499.)   Specifically, Plaintiff's special accommodations include:  (1) extra time for exams and tests; (2) breaking longer assignments into shorter segments; (3) providing written outlines; (4) providing extra clarification for homework; (5) pairing Plaintiff with a "homework buddy" to check each other's work and make sure directions are understood; and (6) having someone at home to "quiz" her and help her study.  (A.R. 502, 579.)  Indeed, the majority of these accommodations, especially the extra time on exams and breaking longer assignments into shorter segments, speak directly to Plaintiff's need for special assistance in overcoming her difficulties in maintaining concentration and/or pace.

---

[12]     Section 504 of the Rehabilitation Act of 1973 provides special accommodations for students who meet certain requisite disability requirements.  Plaintiff qualifies for this program because of her "processing deficit."  (A.R. 498-502; J.S. 6.)

1    Moreover, in 2003, Dr. Stephenson, who personally examined
2    Plaintiff on two occasions, opined that Plaintiff's weak visual
3    perceptual abilities and working memory deficits are "suggestive of
4    attentional problems."[13] (A.R. 426.) Consistent with Dr. Stephenson's
5    opinion, Dr. Griffin, who personally examined Plaintiff in December
6    2005, testified at the hearing that "[t]he discrepancy between working
7    memory and processing speed suggest[s] . . . as well as the discrepancy
8    between her IQ and working memory does suggest that there is some
9    interference with working memory.  Working memory contains things like
10   immediate recall.  So, if a person has an attention deficit disorder I
11   think you would expect . . . some decrement in working memory . . . ."
12   (A.R. 601-02.)  Although he did not test Plaintiff's memory directly,
13   Dr. Griffin opined, based upon Dr. Stephenson's test results, that "if
14   we accept as I do the decrement in working memory is an artifact of a
15   residual attention deficit condition, then I think we'd have to say that
16   she has marked difficulty maintaining concentration, persistence and
17   pace."  (A.R. 611-12.)  Based on the record as a whole, Dr. Griffin
18   concluded that Plaintiff's impairments are sufficiently marked to meet
19   or medically equal Listing 112.02.  (A.R. 612.)
20
21       Dr. Griffin further testified that Plaintiff's overall academic
22   achievement is largely the result of the special accommodations
23   Plaintiff receives, *to wit*, the structure provided by Plaintiff's
24   school, the fact that Plaintiff has the same teachers every year,
25   Plaintiff's testing accommodations, grading on a curve with the ability
26
27       [13] Plaintiff's working memory index score was in the "mild
     mentally deficient range."  *See* Section I, *supra*.  (A.R. 427, 600-03;
28   J.S. 34.)

15

to re-grade, Plaintiff's hard work, and help from her sister with her school work.[14]   (A.R. 603-04.)   Dr. Griffin stated that "the scores on [Plaintiff's] testing are better in '01 and '03 than they were in '97 but only marginally better in regards to her performance IQ score. . . . You might expect that [Plaintiff] would perform better under better structure or circumstances with the right sort of support and interventions and so forth but that the underlying condition would remain fundamentally the same."   (A.R. 606.)

A review of the record as a whole reveals that, despite improvement in Plaintiff's grades over time, Plaintiff continues to have a marked limitation in maintaining concentration, persistence, or pace.   Even the ALJ concedes that Plaintiff has "concentration difficulty associated with her cognitive limitations."   (A.R. 33.)   Although the ALJ concluded that Plaintiff's "concentration difficulty" is "overcome by her relative strengths in 'persistence and pace,' i.e. effort," the Court is unpersuaded by the ALJ's reasoning that Plaintiff's "persistence" is sufficient to overcome her functional limitations in concentration and/or pace.   (*Id.*)

Finally, Plaintiff maintains, and the Court agrees, that because Plaintiff's "educators have adapted her scholastic environment to meet [Plaintiff's] documented deficiencies [by] providing her the structure and support she needs to accommodate her impairments," Plaintiff "would

---

[14]   Specifically, in 2005, Plaintiff's 10th grade chemistry teacher, Angela Campbell, indicated that Plaintiff's "test scores were not good, but she always did makeup work to bring her scores up.   Re-grading was allowed in her class."   (A.R. 504.)   Ms. Campbell further stated that although Plaintiff was a "hard worker with a good work ethic," her work was "poor."   (*Id.*)

worsen outside of this structured environment." (J.S. 22.) Critically, 20 C.F.R § 416.924a(5)(C) states:

> A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside of this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive setting, we must consider how your function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

After reviewing the record as a whole, it is clear to the Court that the weight of the evidence demonstrates that, despite Plaintiff's commendable persistence, her marked difficulties in maintaining concentration and/or pace have not sufficiently improved since 1997. Accordingly, the ALJ's conclusion that Plaintiff's impairments no longer meet or medically equal Listing 112.02 is not based on substantial evidence and is reversed.

**III.  The ALJ's Finding That Plaintiff Does Not Meet Or Medically Equal Listing 112.05 Is Not Supported By Substantial Evidence.**

Plaintiff alleges the ALJ erred in finding that Plaintiff failed to

17

meet the criteria of Listing 112.05 for Mental Retardation.  (J.S. 29.)
Listing 112.05 states, in relevant part:

> Mental Retardation:  Characterized by significantly subaverage
> general intellectual functioning with deficits in adaptive
> functioning.  The required level of severity for this disorder
> is met when the requirements in [subsections] A, B, C, D, E,
> or F are satisfied.

20 C.F.R. Part 404, Appendix 1, Subpart P § 112.05.

Plaintiff contends that she meets subsections A, E, and F which
require:

> A.   For children 3 to 18, resulting in at least two of the
>      appropriate age-group criteria in section (B)(2) of
>      112.02;
>
> E.   A valid verbal, performance, or full scale IQ of 60
>      through 70 and at least one of the following elements of
>      Listing 112.02B2:  (1) marked impairment in age-
>      appropriate social functioning ; (2) marked impairment in
>      age-appropriate personal functioning; (3) marked
>      difficulty in maintaining concentration, persistence, or
>      pace;
>
> F.   For children 3 to 18, resulting in satisfaction of
>      112.02B2, and a physical or other mental impairment

18

imposing an additional and significant limitation of function.

20 C.F.R. Part 404, Appendix 1, Subpart P § 112.05.

As discussed above in Section II, *supra*, Plaintiff's impairments are sufficiently marked to meet "at least two of the appropriate age-group criteria in paragraph B2 of 112.02," *i.e.,* Plaintiff has marked limitations in age-appropriate cognitive/communicative function and difficulty maintaining concentration, persistence, or pace.  Thus, Plaintiff necessarily satisfies subsection A of Listing 112.05.

In addition, Plaintiff's 2001 performance IQ score of 68 falls within subsection E's requirement of a "valid verbal, performance, or full scale IQ of 60 through 70" and, as discussed above, she has "marked difficulty in maintaining concentration, persistence, or pace." Accordingly, Plaintiff also meets the criteria for subsection E of Listing 112.05.

**IV.  Payment Of Benefits Is Required.**

The final question is whether to remand for further administrative proceedings or whether a reversal and remand for payment of benefits is required.  The decision whether to remand for further proceedings is within the discretion of the Court.  Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000).  Where a remand would simply delay payment of benefits or where no useful purpose would be served by further administrative proceedings, it is appropriate to exercise this

19

discretion to direct an immediate award of benefits.  <u>Harman</u>, 211 F.3d at 1179.

In the present case, the ALJ's finding of cessation of disability is not supported by substantial evidence in the record.  There are no outstanding issues that must be resolved before a determination of disability can be made, and it is clear from the record that Plaintiff's cognitive impairments and attendant functional restrictions continued, at least as of the date of her last continuing disability review by the SSA, to be sufficiently marked to render her disabled throughout the relevant period.  Accordingly, as there is no legitimate reason for further administrative proceedings or delay, this case should be reversed and remanded for the immediate payment of benefits.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for the calculation and payment of benefits in accordance with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel

///
///
///
///
///

20

1   for Plaintiff and for Defendant.

2

3        **LET JUDGMENT BE ENTERED ACCORDINGLY.**

4

5   DATED: February 10, 2009

6                                               /s/

7                                 MARGARET A. NAGLE
                       UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28